UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DAYTON SUPERIOR CORPORATION,

                               Plaintiff,               **MEMORANDUM & ORDER**
     -against-                           07 CV 5215  (DRH) (WDW)

MARJAM SUPPLY CO., INC.,

                             Defendant,

     -against-

BARKER STEEL, LLC,

                   Counterclaim Defendant.
--------------------------------------------------------------X

**APPEARANCES:**

**THOMPSON HINE LLP**
Attorneys for Plaintiff
3900 Key Center
127 Public Square
Cleveland, OH 44114
By:    Thomas J. Collin, Esq.
       Jennifer S. Roach, Esq.

335 Madison Avenue
12th Floor
New York, NY 10017
By:    Jeanette Rodriguez

**LEBENSFELD BORKER SUSSMAN & SHARON, LLP**
Attorneys for Defendant
140 Broad Street
Red Bank, NJ 077021
By:    Lawrence Joseph Sharon, Esq.
       Alan M. Lebensfeld, Esq.

**OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP**
Attorneys for Counterclaim Defendant
Park Avenue Tower
65 East 55th Street, NY 10022
By:     Howard Joseph Smith, III
        Thomas J. Fleming, Esq.


**HURLEY, Senior District Judge:**

Plaintiff Dayton Superior Corporation ("Plaintiff" or "Dayton") commenced this diversity action seeking damages based upon an alleged failure by defendant Marjam Supply Co., Inc. ("Defendant" or "Marjam") to pay certain outstanding invoices.  Plaintiff asserts claims for breach of contact and unjust enrichment.  Marjam's Second Amended Answer and Counterclaims (docket no. 76) answered the allegations in the Complaint, asserted several affirmative defenses, and interposed counterclaims against Dayton and Barker Steel LLC ("Barker"), whom Marjam characterizes as an "additional defendant on counterclaims."

Two motions are presently before the Court.  First, Dayton moves to: (1) dismiss Marjam's First, Third, and Fourth Counterclaims pursuant to Rule 12(b)(6), and (2) strike Marjam's first and second Affirmative Defenses pursuant to Rule 12(f).  Second, Barker moves to dismiss Marajm's Second, Third, and Fourth Counterclaims pursuant to Rule 12(b)(6).  For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

## *BACKGROUND*

The following facts are drawn from the allegations contained in the Complaint and Second Amended Answer and Counterclaims (hereinafter referred to as "Answer").

### *The Parties*

Dayton, a public corporation organized under Delaware law, is "the leading North

American manufacturer and provider of specialized products for the non-residential concrete construction market." (Answer ¶¶ 19-21.) Marjam, a corporation organized under New York law, is "the largest building materials distributor and supplier in the Northeastern United States." (*Id.* ¶¶ 17-18.) Marjam operates fifteen "super-centers" in eight states that "sell[ ], distribute[ ] and suppl[y] a large range of construction materials and related products to builders, contractors, architects, engineers, governments and to the public at large." (*Id.* ¶ 18.) Barker, a limited liability company organized under Massachusetts law, "promotes itself as the Northeast United States' oldest and largest reinforcing steel fabricator," which serves the needs of the construction industry in New York, New Jersey, and New England. (*Id.* ¶¶ 23-24.) Like Marjam, Barker is "a building materials distributor and supplier in the Northeastern United States, which sells, distributes and supplies a large range of construction materials and related products . . . to builders, contractors, architects, engineers, governments and to the public at large." (*Id.* ¶ 23.)

Between 2003 and 2007, both Marjam and Barker acted as distributors of Dayton's products and purchased certain construction and building materials from Dayton for resale to their respective customers. (*Id.* ¶¶ 22, 26.) Throughout that period, Barker was "a direct competitor of Marjam." (*Id.* ¶ 27.)

### *The Product*

Beginning in approximately August 2003, Dayton manufactured and sold a product known as "Levelayer I" under the brand name "DS Construction Chemicals" (the "Product"). (*Id.* ¶ 30.) The Product is a "premium, self-leveling floor underlayment" used "to produce a smooth, cement sub-floor for subsequent applications [of floor coverings] by the end-user." (*Id.* ¶ 31.) Dayton sold the Product to "numerous distributors and customers" located in the

Northeast, including Marjam, Barker and Spa Steel Products Co., Inc. ("Spa"). (*Id.* ¶ 32.) According to Marjam, both Barker and Spa are its direct competitors.

### The Complaint

Dayton alleges that between January 25, 2006 and May 14, 2007, Marjam ordered goods from Dayton "at the agreed upon price and reasonable value of $79,850.16." (Compl. ¶ 6.) Dayton asserts that the goods were delivered to and accepted by Marjam, but that Marjam failed to pay the balance due and owing to Dayton.

### Dayton's Alleged Pricing Practices

Marjam alleges that between 2003 and 2007, it purchased "large quantities" of the Product from Dayton for a total price of approximately $832,846.38. (Answer ¶¶ 33-34.) During that time, Marjam paid an average price for the Product of between $13.07 and $14.19 per bag. (*Id.* ¶¶ 35-39.) Marjam alleges that during the same time period, Dayton sold the Product, "and/or commodities of like grade and quality" to Barker and Spa for an average sales price that was "substantially less" (or "more than $3.00 less per bag") than the price Dayton charged Marjam for the Product. (*Id.* ¶¶ 40, 41.) Marjam further alleges that Dayton granted Barker and Spa "rebates, discounts, allowances and/or advertising service charges" in connection with their purchases of the Product that "were not disclosed or offered to Marjam." (*Id.* ¶ 42.) Marjam asserts that Dayton's pricing practices "were part of an illegal tying arrangement, pursuant to which Dayton agreed to afford to its favored distributors, including Barker, lower pricing on the Offending Product in exchange for Barker's agreement to purchase certain other products . . . sold by Dayton."[1] (*Id.* ¶ 45.)

---

[1]     The Product is referred to in the Answer as the "Offending Product."

*A Quest Corporation*

Marjam alleges that as a result of Dayton's "predatory pricing" practices, Marjam "effectively was precluded from selling the Product" to the "'concrete contractor specialists'" and "'flooring specialists'" segments of the relevant market. (*Id.* ¶ 46.) Marjam provides "[b]y way of example only," an account of its relationship with A Quest Corp. ("A Quest"), "one of the major flooring specialist contractors located in the metropolitan New York geographic market." (*Id.* ¶ 52.) Marjam estimates that A Quest has "historically" purchased between 80% and 95% of its plywood and flooring tile requirements from Marjam. During the relevant time period, however, Marjam "was unable to sell" the Product to A Quest "because of Dayton's discriminatory pricing." (*Id.* ¶ 53.)

In July 2004, for example, Dayton sold 900 bags of the Product to Spa, which Spa then resold to A Quest for use on a particular project. (*Id.* ¶ 54.) According to Marjam, at that time Dayton sold the Product to Spa for a price that was $4.00 less per bag than Dayton charged Marjam. (*Id.* ¶¶ 56.57.) Because of this price differential, and despite the "established vendor/vendee relationship between Marjam and A Quest," Marjam could not sell the Product to A Quest for that particular project. (*Id.* ¶¶ 55, 58.)

Marjam further alleges that during the relevant time period, similar differentials between the prices Dayton charged Barker and Marjam also allowed Barker to sell "substantial quantities" of the Product to A Quest. (*Id.* ¶ 59.) Marjam asserts that it could not "offer to A Quest an alternate product of like grade and quality to the Offending Product, because A Quest will only specify the Offending Product on its jobs." (*Id.* ¶ 60.)

***The Alternate Products***

In 2007, upon discovering Dayton's alleged pricing practices, Marjam began purchasing "products of like grade and quality to the Offending Product from other manufacturers" (the "Alternate Products") for prices that were "substantially [ ] less" than what Marjam paid Dayton for the Product. (*Id.* ¶ 61.) As a result, Marjam began selling the Alternate Products to a number of concrete specialists who had previously declined to buy the Product from Marjam and had purchased the Product, instead, from Barker and Spa. (*Id.* ¶¶ 62, 63.) After Marjam stopped purchasing the Product from Dayton and began buying the Alternate Products, Marjam's re-sales (and resulting profits) increased approximately 180%. (*Id.* ¶¶ 64, 65.)

***Allegations Regarding Donald Van Gerve***

Marjam alleges that Donald Van Gerve ("Van Gerve") was employed at all relevant times as Dayton's Area Sales Director for the Northeast Region. (*Id.* ¶ 81.) In that capacity, Van Gerve controlled "pricing for the products which Dayton offered to its distributors," including the Product, during the relevant time period. (*Id.* ¶ 82.) Van Gerve also maintained a separate engineering firm known as "Donald Van Gerve, PE" or "DVG, PE." (*Id.* ¶ 83.)

Marjam asserts that Barker and Spa paid "substantial sums of money" to Van Gerve "ostensibly for engineering work" performed by Van Gerve "extraneous to his employment with Dayton." (*Id.* ¶¶ 84-85.) In reality, according to Marjam, those payments were made to Van Gerve "in exchange for favorable pricing for its products, including the Offending Product, from Dayton." (*Id.* ¶ 85.) Marjam contends alternatively that to the extent any engineering services were rendered by Van Gerve, "the amount paid to Van Gerve greatly exceeded the value of the services rendered." (*Id.* ¶ 86.) According to Marjam, these payments were made "with the intent

to influence Van Gerve's and hence Dayton's pricing of and for its products, including the Offending Product." (*Id.* ¶ 87.)

### The Affirmative Defenses

Marjam has asserted four affirmative defenses, the first two of which are the subject of the present motion to strike by Dayton. First, Marjam asserts the defense of failure to state a claim for relief. (*Id.* ¶ 7.) Second, Marjam asserts an unclean hands defense, arguing that Dayton is barred from any recovery against Marjam due to its "past, present, continuing, systematic and pervasive violations of the Robinson-Patman Act, 15 U.S.C. § 13, *et seq.*, and acts of unfair competition." (*Id.* ¶ 8.)

### The Counterclaims

Marjam also interposes four counterclaims. The First Counterclaim alleges that Dayton engaged in price discrimination in violation of 15 U.S.C. §§ 13(a) and 13a. The Second Counterclaim asserts that Barker's "knowing inducement and/or receipt of discriminatory pricing and unfair business conduct" violates 15 U.S.C. §§ 13(f). (*Id.* ¶ 78.) The Third Counterclaim contains an allegation of commercial bribery in violation of 15 U.S.C. § 13(c). Finally, the Fourth Counterclaim alleges that Dayton and Barker engaged in conduct that constitutes the New York common law "tort of unfair competition." (*Id.* ¶ 92.) Marjam seeks an award of trebled compensatory damages and attorneys' fees with respect to the first three counterclaims. With regard to the Fourth Counterclaim, Marjam seeks compensatory and punitive damages. (*See id.*, WHEREFORE clause.)

## *DISCUSSION*

### I.    *Legal Standard for the Motions to Dismiss Pursuant To Rule 12(b)(6)*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (internal citations, alteration and quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *see also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II.     The First Counterclaim

### A.     Legal Standard

The Robinson-Patman Act "was specifically enacted to protect small businesses from discriminatory pricing by manufacturers in favor of large chain stores." *The Intimate Bookshop, Inc. v. Barnes & Nobles, Inc.*, 2003 WL 22251312, at *2 (S.D.N.Y. Sept. 30, 2003) (citing *Abbott Labs. v. Portland Retail Druggists Ass'n, Inc.*, 425 U.S. 1, 11 (1976)).  Section 2(a) of the Robinson-Patman Act "prohibits a seller from engaging in price discrimination that is likely to result in competitive injury." *Best Brands Beverage, Inc. v. Fallstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987).  Section 2(a) provides, in relevant part:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either of the purchasers involved in such discrimination are in commerce, where such commodities are sold for use, consumption or resale . . ., and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

15 U.S.C. §13(a).

Price discrimination claims brought pursuant to Section 2(a) "generally fall into three categories." *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 n.2 (2d Cir. 1998).  Primary-line discrimination claims arise "when a seller's price discrimination harms competition with the seller's competitors." *Id.* (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993)).  Secondary-line discrimination claims arise "when a seller's discrimination impacts competition among the seller's customers; i.e. the favored

purchasers and disfavored purchasers." *Id.* (citing *F.T.C. v. Sun Oil Co.*, 371 U.S. 505, 527 (1963)). Tertiary-line claims arise "when the seller's price discrimination harms competition between customers of the favored and disfavored purchasers, even though the favored and disfavored purchasers do not compete directly against another." *Id.* (citing *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 436 (1983)). Marjam asserts a secondary-line price discrimination claim, "to wit, discrimination by Dayton which impacts competition among Dayton's customers, Marjam, Barker and Spa." (Marjam's Dayton Opp'n at 8.)

To state a *prima facie* claim for secondary-line price discrimination, a plaintiff bears the burden to establish: "(1) that [the] seller's sales were made in interstate commerce; (2) that the seller discriminated in price as between the two purchasers; (3) that the product or commodity sold to the competing purchasers was of the same grade and quality; and (4) that the price discrimination had a prohibited effect on competition." *Camarda v. Snapple Distribs., Inc.*, 2007 WL 2702825, at *5 (S.D.N.Y. Sept. 13, 2007) (citing *George Haug Co.*, 148 F.3d at 142). Some courts have referred to the fourth element, in dispute in the present case, as a "competitive injury." *See, e.g., Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 472 F. Supp. 2d 385, 422-23 (E.D.N.Y. 2007)

Even if a plaintiff sets forth a *prima facie* case of Section 2(a) price discrimination by establishing the above four elements, "monetary or injunctive relief is not presumed." *The Intimate Bookshop*, 2003 WL 22251312 at *3 (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1020-21 (2d Cir. 1989)); *see also Interstate Cigar Co. v. Sterling Drug Inc.*, 655 F.2d 29, 31 (2d Cir. 1981) (noting that a private plaintiff is not entitled to "automatic damages" even if he proves that Section 2(a) has been violated). Although a

plaintiff's substantive price discrimination claims arise from Section 2(a) of the Robinson-Patman Act, the plaintiff's private right of action (or standing) to seek treble damages for such a violation is provided by Section 4 of the Clayton Act, 15 U.S.C. § 15.  *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007).  That provision permits "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws [to] sue therefor . . . and shall recover threefold the damages by him sustained . . . ."  15 U.S.C. § 15(a).

Despite the "sweeping language" of Section 4 of the Clayton Act, *see Port Dock & Stone Corp.*, 507 F.3d at 121, courts within this Circuit have generally acted "cautious[ly] [so as] not to extend standing to bring suit beyond that needed for effective enforcement of the Robinson-Patman Act."  *Schwimmer v. Sony Corp. of Am.*, 471 F. Supp. 793, 796 (E.D.N.Y. 1979).  Therefore, in order for a private plaintiff to have "antitrust standing" enabling it to bring an action seeking treble damages under Section 4 of the Clayton Act, "a showing of a special kind of 'antitrust injury'" is required."  *Port Dock & Stone Corp.*, 507 F.3d at 121.  An "antitrust injury" is an "actual injury attributable to something the antitrust laws were designed to prevent."  *Drug Mart Pharmacy Corp.*, 472 F. Supp. 2d at 423 (quoting *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981)) (internal quotation marks omitted).  To establish an antitrust injury, "a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute."  *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

Antitrust injury (a necessary prerequisite to antitrust standing) and competitive injury (an

element of a *prima facie* case of price discrimination) "are conceptually distinct." *Camarda*,

2007 WL 2702825 at *10 (citing *J. Truett Payne Co.*, 451 U.S. at 561-62); *see also Drug Mart*

*Pharmacy Corp.*, 472 F. Supp. 2d at 423 ("Competitive injury is one element necessary to make

out a *prima facie* case. 'Antitrust injury' is not part of the *prima facie* case."). Dayton argues

that Marjam has inadequately pled both an antitrust injury and a competitive injury.

### B.    *Marjam Has Adequately Pled An Antitrust Injury*

Dayton argues that Marjam has failed to plead an antitrust injury – and, thus, lacks

standing to bring a price discrimination claim under Section 2(a) of the Robinson-Patman Act, 15

U.S.C. § 13 – for two reasons. First, Dayton asserts that Marjam has failed to sufficiently allege

a causal connection between the alleged price discrimination and its injury. (Dayton Mem. at 5-

6.) Second, Dayton asserts that Marjam is not the type of plaintiff that Congress intended to

protect when it passed the Robinson-Patman Act. (*Id.* at 8.) The Court addresses each of these

arguments in turn.

### 1.    Marjam Has Adequately Pled a Causal Connection Between Its Alleged Injury and Dayton's Alleged Price Discrimination

As set forth above, "[t]o establish an antitrust injury, a plaintiff must show (1) an injury in

fact, (2) that was caused by the violation, and (3) that it is the type of injury contemplated by the

statute." *United Magazine Co. v. Murdock Magazines Distrib., Inc.*, 393 F. Supp. 2d 199, 209

(S.D.N.Y. 2005). With respect to the causation prong, a plaintiff bears the burden "'to show a

causal connection between the price discrimination in violation of the Act and the injury

suffered.'" *Id.* (quoting *Perkins v. Standard Oil Co.*, 395 U.S. 642, 642 (1969)). "In doing so, [a

plaintiff] must show 'some *direct evidence*' illustrating a causal link between discrimination and

injury." *Id.* (quoting *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1273-74 (3d Cir. 1995)) (emphasis in the original). Importantly, a plaintiff "must show that the alleged discrimination – and not other factors – was the cause of the injury [it] allegedly suffered." *Id.*

In a secondary-line price discrimination case, such as this, the alleged injury "must be traced to the competitors' competitive use of their price advantage." *Drug Mart Pharmacy Corp.*, 472 F. Supp. 2d at 424. Therefore, "[p]roof of a lower resale price is a prerequisite to recovery in a secondary-line price discrimination case because only then may the defendants' grant of an unlawful lower price to the favored purchaser possibly result in injury to the plaintiffs." *Id.* (citing *Uniroyal, Inc. v. Jetco Auto Serv., Inc.*, 461 F. Supp. 350, 359 (S.D.N.Y. 1978)). "[I]f the price discrimination . . . was the cause of the plaintiffs' injury, the plaintiffs should be able to match up their losses with gains to the favored competitors.'" *Id.* at 424-25 (quoting *Hasbrouck v. Texaco, Inc.*, 1980 WL 1843, at *19 (E.D.Wash. Mar. 31, 1980), *aff'd in part, rev'd in part*, 663 F.2d 930, (9th Cir. 1981)).

The Court finds that Marjam has successfully pled the causation element of antitrust injury. Marjam alleges that it competed with Barker and Spa to sell products, including the Product, "to the concrete contractor specialist and flooring specialist segments" in the relevant market during the time period at issue. (Answer ¶ 47.) Marjam further alleges that during this time period, Dayton sold the Product to Barker and Spa (the favored purchasers) "at an average sales price substantially less than Dayton charged to Marjam." (*Id.* ¶ 40.) As a result, both Spa and Barker were able to sell the Product to, for example, A Quest, but Marjam was not. (*See id.* ¶¶ 54-59.)

The Court, mindful that "[a]ntitrust allegations . . . are governed by the notice pleading

requirements contained in Federal Rule of Civil Procedure 8(a)" finds Marjam's allegations sufficient to establish the causal connection necessary for antitrust standing. *See Am. Booksellers Ass'n, Inc. v. Houghton Mifflin Co., Inc.*, 1995 WL 92270, at *5 (S.D.N.Y. Mar. 3, 1995). Marjam has pled that it suffered an injury to its business that "flow[ed]" from Dayton's alleged price discrimination. *See Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 478 (S.D.N.Y. 2001); *see also The Intimate Bookshop*, 2003 WL 22251312 at *4 ("[T]hough a plaintiff need not enumerate all possible sources of its loss, it must make some showing that the injury to its business was not caused by factors unrelated to the defendant's price discrimination.").

Dayton offers no case law in support of its contention that "[i]t was Marjam's failure to turn to an alternative supplier of self-leveling floor underlayment that caused any injury that Marjam is alleging, not [Dayton's] pricing." (Dayton Mem. at 7.) Moreover, as Marjam points out, it has specifically alleged that A Quest would not accept any substitute products in lieu of the Product, and so Marjam "match[ed] up [its] losses [of sales to A Quest] with gains to the favored competitors" Barker and Spa, which did sell the Product to A Quest. *See Drug Mart Pharmacy Corp.*, 472 F. Supp. 2d at 424.[2] Accordingly, Marjam has adequately pled the causation element of an antitrust injury.

### 2.     Marjam Has Adequately Pled An Injury Contemplated By the Statute

Courts within the Second Circuit have noted that "[i]n contrast to other antitrust laws, the Robinson-Patman Act was specifically enacted to protect small businesses from discriminatory pricing by manufacturers in favor of large chain stores." *The Intimate Bookshop, Inc.*, 2003 WL

---

[2]     Dayton's argument that Marjam's allegations recount only "de minimis harm" (*see* Dayton Reply at 4) are addressed, *infra*.

22251312 at *2; *see also* Dayton Mem. at 8 (collecting cases). According to Dayton, therefore, "Marjam – 'the largest building materials distributor and supplier in the Northeastern United States' – is not the type of plaintiff the Act was passed to protect." (Dayton Mem. at 8 (quoting Answer ¶ 18).) Even if this were true, however, Dayton has not provided (and the Court's own research has not uncovered) a single case dismissing a secondary-line price discrimination claim on the basis that the plaintiff is too large or powerful of a business to warrant protection under the Robinson-Patman Act.

Indeed, some courts have rephrased the three-pronged inquiry to determine antitrust injury – which traditionally requires a plaintiff to show: (1) injury in fact, (2) caused by a violation of the statute, and (3) that it is the type of injury contemplated by the statute – as requiring a plaintiff "to show a causal connection between the *price discrimination in violation of the Act* and the injury suffered." *United Magazine Co.*, 393 F. Supp. 2d at 209 (quoting *Perkins*, 395 U.S. at 648) (emphasis added, internal quotation marks omitted); *see also Drug Mart Pharmacy Corp.*, 472 F. Supp. 2d at 424 ("For purposes of Robinson-Patman secondary-line cases, antitrust injury is the competitor's unfair competitive edge that is used to attract sales or profits from the plaintiffs."); *The Intimate Bookshop, Inc.*, 2003 WL 22251312 at *3 (noting that an "antitrust injury" can be shown "through some evidence of actual injury, usually in the form of lost sales or profits, and a causal connection between the *price discrimination* and the actual damage suffered") (quoting *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 572 (1990)) (emphasis added, internal quotation marks omitted). The Court is persuaded by the language in the immediately-above-cited case law that in order to plead the existence of "a type of injury contemplated by the statute," a plaintiff must simply plead a causal connection between unlawful

16

price discrimination and its injury.  *See The Intimate Bookshop, Inc.*, 2003 WL 22251312 at *3.

Accordingly, the Court finds that Marjam has sufficiently alleged an antitrust injury conferring it with standing to assert a claim for treble damages pursuant to Section 4 of the Clayton Act.

### C.     *Marjam Has Adequately Pled the Fourth Element of the Prima Facie Case*

Only the fourth element of the *prima facie* case is at issue here.  (*See* Dayton Mem. at 9.)[3]
As noted above, a plaintiff asserting a claim of price discrimination in violation of Section 2(a) of the Robinson-Patman Act must plead a "competitive injury": That the alleged price discrimination "had an unlawful effect on competition."  *See, e.g.*, *Monsieur Touton Selection, Ltd. v. Future Brands, LLC*, 2006 WL 2192790, at *3 (S.D.N.Y. Aug. 1, 2006).  "A hallmark of the requisite competitive injury" in secondary-line price discrimination cases "is the diversion of sales or profits from a disfavored purchaser to a favored purchaser."  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).  In *FTC v. Morton Salt Co.*, 334 U.S. 37, 49-51 (1948), the Supreme Court "recognized that a permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time," provided that the plaintiff demonstrates "actual competition" with the favored competitor.  *Volvo Trucks*, 546 U.S. at 177 (citing *Morton Salt Co.*, 334 U.S. at 49-51); *see also Monsieur Touton Selection, Ltd.*, 2006 WL 2192790 at *4 (noting that the fourth element of a *prima facie* case of a secondary-line price discrimination case may be pled with an allegation that the plaintiff "was actually competing with the favored purchaser at the time of the

---

[3]     Dayton asserts that while its motion only addresses Marjam's failure to adequately plead the injury to competition element, it "does not concede adequate allegations of other elements needed for a claim under Section 2(a)."  (Dayton Reply at 4.)

price discrimination," and that the price discrimination "was substantial and sustained over time") (citing *George Haug Co.*, 148 F.3d at 142-44).

To satisfy the fourth element of the *prima facie* case, therefore, Marjam must "allege that there was price discrimination between it and [the favored purchaser] during the time, and in the place, where that plaintiff and [the favored purchaser] competed for the sale of the same goods." *United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 146 F. Supp. 2d 385, 396 (S.D.N.Y. 2001). The Court finds that Marjam has met its burden to sufficiently plead the "injury to competition" element of the *prima facie* case.

Marjam has alleged that between 2003 and 2007, Barker and Spa were its "direct competitor[s]" in the Northeastern United States market. (Answer ¶¶ 27, 32, 47.) Marjam has further alleged that during that time, it purchased the Product from Dayton for resale to its customers, and that Barker and Spa also purchased the Product from Dayton for resale to their customers. (*Id.* ¶¶ 32–34.) According to Marjam, Dayton sold the Product to Barker and Spa during the relevant time period at a price that was approximately $3 per bag less than the price Dayton charged Marjam for the Product. (*Id.* ¶ 41.) Marjam further asserts that during this time, Dayton granted Barker and Spa rebates, discounts, and other allowances towards the purchase of the Product that Dayton did not offer to Marjam. (*Id.* ¶ 42.)

Moreover, Marjam alleges that during the relevant time period it competed with Barker and Spa to market and sell products to "the concrete contractor specialist and flooring specialist segments" of the relevant market. (*Id.* ¶ 47.) As a specific example, Marjam alleges that it lost sales of the Product to A Quest, and that Barker and Spa were contemporaneously able to sell the Product to A Quest because Barker and Spa were able to offer a lower resale price as a result of

the allegedly discriminatory price differential they received from Dayton. (*See id.* ¶¶ 52-60.)

Marjam further alleges that it was unable to sell the Product to certain other concrete specialists, and that those sales were lost to Barker and Spa. (*Id.* ¶¶ 62-63.) Overall, the Court finds these allegations sufficient to plead the disputed fourth element of a *prima facie* claim of secondary-line price discrimination in violation of the Robinson-Patman Act.

Dayton relies on cases decided by and within the Third Circuit for the proposition that the Robinson-Patman Act "does not govern cases where, as here, the complained of practice causes a simultaneous reduction of intrabrand competition and stimulation of interbrand competition." (Dayton Mem. at 10; *see also* Barker Mem. at 7.) However, *Feesers, Inc. v. Michael Foods, Inc.*, 2010 WL 27209, at *3 (3d Cir. Jan 7, 2010), one of the cases upon which Dayton relies, specifically applies the same legal framework utilized by this Court in this decision: "Competitive injury under § 2(a) of the [Act] is established by proof of a substantial price discrimination between competing purchasers over time . . . [The plaintiff] need prove only that (a) it competed with [the favored purchaser] to sell [the product] and (b) that there was price discrimination over time by [the defendant.]" In addition, *Korkala v. Allpro Imaging, Inc.*, 2009 WL 2496506, at *1-2 (D.N.J. Aug. 12, 2009), another case on which Dayton relies, appears to be a primary-line price discrimination case and is, therefore, inapposite here. *See Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 476 (S.D.N.Y. 2001) ("It is important to note that a secondary-line price discrimination claim does not require the same competitive injury showing as a primary-line claim.")

Finally, Dayton argues that "the only head-to-head competition alleged – for a sale to A Quest Corp. – represents de minimis harm that does not suffice to demonstrate injury to

competition . . . ." (Dayton Reply at 4.)  As an initial matter, Marjam's lost resales to A Quest

are not the only example of competition alleged.  Marjam has also pled that it competed with

Barker and Spa for resale opportunities to concrete specialists including George A. Fuller Co.,

Difama Concrete, Roger and Sons Concrete, and Oliviera Contracting, all of whom purchased

the Product from Barker and Spa during the relevant time period, and did not purchase the

Product from Marjam.  (*See* Answer ¶¶ 62, 63.)  In any event, "[e]vidence of illegally

discriminatory sales to even one competitor for resales to the same retail customer, if proved,

could be sufficient to prove a violation."  *Camarda*, 2007 WL 2702825 at *5 (citing *Morton Salt

Co.*, 334 U.S. at 45).  While the Court recognizes that the Second Circuit has found that, at the

summary judgment stage, a plaintiff seeking to establish the fourth element of the *prima facie*

case must "show that any price discrimination between [the plaintiff and the favored purchaser]

was of such magnitude as to affect substantially competition between the two competitors,"

*United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed. Appx. 14 (2d Cir. Mar. 25, 2008),

Marjam's pleading makes clear that its allegations involving resales of the Product that it alleged

lost to Barker and Spa are pled "[b]y way of example only."  (Answer ¶ 52.)  Thus, the Court

finds that Marjam has alleged enough facts at this point to proceed to discovery on the First

Counterclaim.

 Therefore, that portion of Dayton's motion seeking the dismissal of Marjam's First

Counterclaim, which asserts a claim under Section 2(a) of the Robinson-Patman Act, 15 U.S.C. §

13(a), is DENIED.

 Although not raised by the parties, the Court *sua sponte* dismisses that portion of

Marjam's First Counterclaim that purports to assert a claim under Section 3 of the Robinson-

Patman Act, 15 U.S.C. § 13a. "Section 3 provides criminal penalties for, *inter alia*, discriminatory discounts or rebates or predatory pricing in the sale of goods, and is enforceable by the government." *Li Xi v. Apple Inc.*, 603 F. Supp. 2d 464, 469 (E.D.N.Y. 2009). Because "no private right of action exists under this section," any purported claims under Section 3 of the Robinson-Patman Act, 15 U.S.C. § 13a must be dismissed. *See id.* (collecting cases).

## III.    The Second Counterclaim is Dismissed

### A.    Legal Standard

Section 2(f) of the Robinson-Patman Act, 15 U.S.C. §13(f), provides: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section." 15 U.S.C. § 13(f). To state a claim under Section 2(f), a plaintiff must first adequately plead all of the elements of a Section 2(a) claim. *See Flash Elecs., Inc. v. Universal Music & Video Distrib. Corp.*, 312 F. Supp. 2d 379, 400 (E.D.N.Y. 2004) (citing *Great Atl. & Pac. Tea Co., Inc. v. F.T.C.*, 440 U.S. 69, 77 (1979)). In addition, a plaintiff must "demonstrate that defendants 'knowingly [induced] or receive[d] a discrimination in price which is prohibited by" Section 2(f). *Coalition for a Level Playing Field LLC v. Autozone, Inc.*, 2001 WL 1763440, at *6 (E.D.N.Y. Oct. 18, 2001) (citing 15 U.S.C. § 13(f)). "The knowledge requirement has been construed to mean that the buyer must have either actual knowledge, i.e., he or she must have known that the price in question was illegal, or constructive knowledge, i.e., he or she must have been reasonably cognizant of its illegality." *Hygrade Milk & Cream Co., Inc. v. Tropicana Prods., Inc.*, 1994 WL 38549, at *3 (S.D.N.Y. Feb. 4, 1994) (citing *Automatic Canteen Co. v. FTC*, 346 U.S. 61, 79-80 (1995)); *see also Am. News Co. v. FTC*, 300 F.2d 104, 110 (2d Cir. 1962) ("Although knowledge must be

proved, it need not be by direct evidence; circumstantial evidence, permitting the inference that petitioners knew, or in the exercise of normal care would have known, of the [statutory violation] is sufficient.").

### B. Marjam Has Failed to Plead a Claim Under Section 2(f)

Barker, seeking the dismissal of the Second Counterclaim, contends that Marjam has not pled that Barker knowingly induced or received a discriminatory price.[4]  (Barker Mem. at 9.)  In particular, Barker argues that because Marjam has alleged that Dayton offered the same prices to both Barker and Spa Steel, "Barker had no reason to believe it was a 'favored purchaser.'" (*Id.*)  Marjam asserts in opposition that "[t]he same facts which support Marjam's Section 2(a) claim . . . also satisfy the actual or constructive knowledge element of the Section 2(f) claim.  (Marjam Barker Opp'n at 16.)

Marjam has alleged that Barker "promotes itself as the Northeast United States' oldest and largest reinforcing steel fabricator."  (Answer ¶ 24.)  Marjam further alleges that "Barker knowingly induced or received the prohibited discrimination in price, in part or in whole in exchange for its commitment to purchase other products manufactured and sold by Dayton."  (*Id.* ¶ 74; *see also id.* ¶ 45 ("Dayton's predatory pricing . . . was part of an illegal tying arrangement, pursuant to which Dayton agreed to afford to its favored distributors, including Barker, lower pricing on the Offending Product in exchange for Barker's agreement to purchase from Dayton certain other products manufactured and sold by Dayton.").)

---

[4]     As an initial matter, Barker contends that the Second and Third Counterclaims cannot be maintained if Marjam's Section 2(a) price discrimination claim is dismissed.  (*See* Barker Mem. at 5.)  For the reasons set forth above, the Court finds that Marjam has adequately alleged a *prima facie* case under Section 2(a).

Having considered these allegations and the case law cited by the parties, the Court cannot conclude that Marjam has pled a viable claim against Barker under Section 2(f). The Court has carefully compared the allegations in the Second Counterclaim to allegations that other courts within the Circuit have found sufficiently state a Section 2(f) claim. In *Flash Electronics*, for example, the Court found that the knowledge requirement of the plaintiff's Section 2(f) claim was adequately pled based on the plaintiff's allegations that the defendants jointly controlled more than 75% of the relevant market and had, for several years, "encouraged and applied pressure on Universal to make them exclusive distributors of Universal products in the U.S. rental market, at the exclusion of the Plaintiffs." 312 F. Supp. 2d at 400-01 (internal quotation marks and alterations omitted). The court found that the plaintiffs' allegations "suggest[ed] that [the defendants] acted intentionally to induce preferred status with Universal," and that "these allegations collectively are sufficient for the 2(f) claim to survive a motion to dismiss." *Id.* at 401.

In *Coalition For a Level Playing Field, LLC*, the plaintiff adequately pled the knowledge requirement by alleging that the defendants had been provided with "precise data to show defendants that they have been receiving favorable discriminatory prices," and that the "defendants' knowledge of the discriminatory pricing was apparent from information and discussions that plaintiffs conducted with salespersons from the manufacturers." 2001 WL 1763440 at *6. In *Hygrade Milk & Cream Co., Inc.*, the plaintiff successfully stated a Section 2(f) claim by alleging that the defendants were "sophisticated wholesalers" who knew or should have known about the discriminatory prices they received because they had "falsely over reported their sales of orange juice to chain stores in order to purchase additional orange juice . . . at the

promotional and discriminatory discount prices," and then re-sold that juice at prices lower than those offered by the plaintiffs. 1994 WL 38549 at *3.[5]

Similar allegations are not present here. Aside from asserting allegations that simply track the language of the statute, Marjam has asserted, in conclusory fashion, that an "illegal tying arrangement" existed between the parties. (*See* Answer ¶ 45.) The Court notes initially that to state a valid claim based upon an "unlawful tying arrangement"[6] in violation of 15 U.S.C. §§ 1 and 14, a plaintiff must allege: "first, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a 'not insubstantial' amount of interstate commerce in the 'tied' market." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.*, 880 F.2d 1514, 1516-17 (2d Cir. 1989)).

Marjam has not pled any of these elements and, indeed, does not explicitly assert a tying claim under the Sherman Act. Rather, it appears that Marjam is attempting to create an inference that because this alleged tying arrangement existed, Barker knew (or should have known) that it was receiving favorable discriminatory prices. The Court finds, however, that Marjam's allegations regarding the existence and contours of the alleged tying arrangement are wholly

---

[5] Each of these cases were decided before the Supreme Court clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6) *Twombly* and *Iqbal*.

[6] "A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (internal quotation marks and alteration omitted).

conclusory in nature.  Marjam has alleged nothing further in the way of factual support for its assertion that Barker had either actual or constructive knowledge of any discriminatory favorable prices that it received from Dayton.  Accordingly, the Court finds that Marjam's Second Counterclaim does not "plausibly give rise to an entitlement to relief" for a violation of Section 2(f) and is, therefore, dismissed.  *See Iqbal*, 129 S. Ct. at 1950.

## IV.  *The Third Counterclaim is Dismissed*

### A.  *Legal Standard*

Section 2(c) provides, in relevant part: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation . . . except for services rendered in connection with the sale or purchase of goods, wares or merchandise . . . ."  15 U.S.C. § 13(c). The general consensus among "[c]ourts and commentators" is that Section 2(c) "was enacted primarily to target the practice of 'dummy brokerages' whereby large retail buying groups . . . would require suppliers to pay fees to 'dummy brokers,' who then passed the fees on to the large retailer, effectively reducing the price the retailer paid for the goods."  *Blue Tree Hotels*, 369 F.3d at 221 (citing *F.T.C. v. Henry Broch & Co.*, 363 U.S. 166, 168-69 (1960)).

"The Second Circuit has never reached the question of whether – and under what circumstances – commercial bribery can form the basis of a claim under § 2(c)."  *Id.* ("And we find that we need not decide the issue here.").  While district courts within the Circuit appear split on the issue, the majority of courts addressing the issue have held – or have at least assumed *arguendo* – that Section 2(c) does encompass claims of commercial bribery.  *Compare Monsieur Touton Selection, Ltd.*, 2006 WL 2192790 at **4, 7 ("This allegation fails to state a commercial

bribery claim under Section 2(c), even assuming such a claim exists under Second Circuit law."),
*and United Magazine Co.*, 146 F. Supp. 2d at 397 ("To the extent that section 2(c) prohibits
bribery, it prohibits cases of commercial bribery involving a breach of a fiduciary duty to a
buyer's agent.") (internal quotation marks omitted), *and Coalition for a Level Playing Field LLC*,
2001 WL 1763440 at *7 (dismissing Section 2(c) claim when pleading contained "no allegations
of a brokerage arrangement or commercial bribery at all"), *and Philip Morris, Inc. v. Grinnell
Lithographic Co., Inc.*, 67 F. Supp. 2d 126, 130-31 (E.D.N.Y. 1999) (noting that Section 2(c)
"has also been construed to cover cases of commercial bribery involving a breach of fiduciary
duty by the buyer's agent") (internal quotation marks omitted), *and Roosevelt Sav. Bank v.
Eveready Maint. Supply Co.*, 1987 WL 30194 at *1 (E.D.N.Y. Dec. 2, 1987) ("Courts construing
§ 2(c) . . . have deemed its language sufficiently flexible to cover cases of commercial bribery
involving a breach of fiduciary duty by the buyer's agent."), *and Gregoris Motors v. Nissan
Motor Corp. In USA*, 630 F. Supp. 902, 910 (finding plaintiff stated claim as to some defendants
under Section 2(c) based upon commercial bribery), *with The Intimate Bookshop, Inc.*, 88 F.
Supp. 2d at 140 ("Section 2(c) was not intended to apply outside of the brokerage context.").

### B. *Marjam Has Failed to Plead a Claim Under Section 2(c)*

#### 1. Specificity of Allegations

The Second Circuit has stated that, to the extent a claim under Section 2(c) "could be
based on commercial bribery, a necessary requirement for stating such a claim would be
allegations sufficient to establish commercial bribery." *Blue Tree Hotels*, 369 F.3d at 221. In
New York, "[a] person is guilty of commercial bribery in the second degree when he confers, or
offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent

of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs." N.Y. Penal Law § 180.00; *see also* William C. Donnino, Practice Commentary, appended to N.Y. Penal Law § 180.00 (McKinney's 2010) ("Thus, the essence of bribery, as defined in this article, is in the 'intent' to influence improperly the conduct of another by bestowing a benefit . . . .").

In *Blue Tree Hotels*, the plaintiff (a hotel owner) alleged that the defendant (acting as the plaintiff's purchasing agent) was responsible for making numerous purchases from outside vendors on behalf of the plaintiff's hotels. 369 F.3d at 220. The plaintiff alleged that the defendant and vendors entered into purchase agreements pursuant to which the vendors paid "Kickbacks" to the defendant. *Id.* at 221. The plaintiff contended, *inter alia*, that because the defendant refused to enter into purchasing agreements with vendors who did not pay the "Kickbacks," the plaintiff was precluded "from negotiating advantageous prices and terms" with those excluded vendors. *Id.* at 220-21. The Second Circuit noted, however, that the plaintiff's claim of commercial bribery "is premised entirely on the tautology created by the fact that the Blue Tree Owners have labeled the payments made by vendors "Kickbacks." *Id.* at 221. The court concluded that "[b]ecause the . . . complaint does not allege that the vendor payments themselves were improper, the [plaintiffs] have failed to allege facts constituting commercial bribery." *Id.* at 222.

Dayton contends that here, as in *Blue Tree Hotels*, "Marjam has not satisfied the *Twombly* burden of pleading a sufficient factual basis demonstrating its entitlement to relief" because Marjam "attempt[s] to state a claim for commercial bribery solely by labeling payments as bribes." (Dayton Mem. at 12, 13.) The Court disagrees. In *Blue Tree Hotels*, the Second Circuit

found that the complaint was deficient because it lacked "any allegations that the vendor payments were, in fact, bribes – that is, that they were paid by the vendors with the intent to improperly influence or corrupt Starwood's conduct on behalf of the [plaintiffs]." 369 F.3d at 222. Here, Marjam has alleged that "[t]he sums paid to Van Gerve by Dayton's favored distributors, ostensibly for engineering work performed by Van Gerve for the favored distributors' benefit, in reality were, in whole or in part, *payments made in exchange for favorable pricing for its products*, including the Offending Product, from Dayton." (Answer ¶ 85 (emphasis added).) Marjam's allegations are not simply conclusory designations of payments from Barker and Spa as "bribes" but, rather, as payments made "with intent to influence" Van Gerve to provide them with favorable pricing.

## 2. Breach of Fiduciary Duty to Buyer's Agent

Dayton also asserts that, to the extent courts within the Circuit have recognized Section 2(c) claims based upon allegations of commercial bribery, those cases have "involv[ed] a breach of fiduciary duty by the buyer's agent." (Dayton Mem. at 12.) Dayton is correct in this regard. *See, e.g.*, *United Magazine Co.*, 146 F. Supp. 2d at 397 (dismissing Section 2(c) claim because "[t]o the extent that section 2(c) prohibits bribery, it prohibits cases of commercial bribery involving a breach of fiduciary duty by the buyer's agent," and the plaintiff had not included any such allegations; "The allegations that a discount or payment passed from one business to another does not implicate bribery involving a breach of fiduciary duty.") (internal quotation marks omitted); *Grinnell*, 67 F. Supp. 2d at 130-31 (finding Section 2(c) "cover[s] cases of commercial bribery involving a breach of a fiduciary duty by the buyer's agent," and refusing to dismiss claim based on allegations that the defendant-seller bribed the plaintiff-buyer's

purchasing agent in return for favorable purchasing process) (internal quotation marks omitted); *Roosevelt Sav. Bank*, 1987 WL 30194 at *1 (plaintiff-buyer could maintain Section 2(c) commercial bribery claim against defendant-seller based upon allegations that defendant paid bribes to plaintiff's purchasing agent in order to procure purchase orders from the plaintiff); *see also Blue Tree Hotels*, 369 F.3d at 222 (noting possible breach of fiduciary duty between plaintiff and defendant, but dismissing commercial bribery claim on other grounds); *but see Gregoris Motors*, 630 F. Supp. at 910-11 (declining to dismiss Section 2(c) commercial bribery claim brought by plaintiff car dealership against defendant manufacturer when plaintiff alleged that the other dealerships had bribed the manufacturers' employees "to receive early delivery and sought-after [car] models").

Although not explicitly articulated by Dayton, the Court construes its argument to be that any fiduciary duty at issue here was between Van Gerve (Dayton's employee) and Dayton (the seller) – thus, Marjam's alleged bribery scheme does not involve any breach of a fiduciary duty owed to Marjam as a buyer. (*See* Dayton Mem. at 11-12.) The Court need not determine whether a showing of a breach of fiduciary duty by the buyer's agent is necessary to sustain a commercial bribery claim under Section 2(c) – to the extent one is cognizable in this Circuit – however, because the Court finds that Marjam has failed to allege another element necessary to establish a claim of commercial bribery. *See Blue Tree Hotels*, 369 F.3d at 221.

### 3. "Employer Consent" Element of Commercial Bribery Claim

Marjam has failed to allege that any payments made by Barker and Spa to Van Gerve were made "without the consent of [Van Gerve's] employer or principal," namely, Dayton. *See* N.Y. Penal Law § 180.00; *see also June Fabrics, Inc. v. Teri Sue Fashions, Inc.*, 194 N.Y.S.2d

877, 882 (N.Y. Sup. Ct. 1948) (interpreting predecessor statute and noting "[i]t would seem there could be no violation of the statute if the principal or employee had knowledge and either approved or condoned the act of his employee or agent").[7]

Marjam alleges that Van Gerve "controls and/or controlled pricing for the products" offered by Dayton, that Van Gerve was paid money by "Dayton's favored distributers," and that these payments, while "ostensibly for engineering work performed by Van Gerve . . . in reality were . . . payments made in exchange for favorable pricing for its products." (Answer ¶ 85.) Marjam asserts that "it can be inferred from these assertions that Dayton did not consent to the payments." (Marjam Dayton Opp'n at 20.) Marjam does not explain why such an inference would be appropriate here. Moreover, Marjam alleges earlier in its pleading that "*Dayton* agreed to afford to its favored distributors, including Barker, lower pricing on the Offending Product in exchange for Barker's agreement to purchase from Dayton certain other products manufactured and sold by Dayton." (Answer ¶ 45 (emphasis added).) This allegation suggests that Van Gerve did not act unilaterally in setting pricing for the Product but that Dayton as an entity was involved in pricing decisions. Given these alleged facts, the Court declines to "infer[ ]" that Dayton did not consent to the payments alleged made to Van Gerve in exchange for favorable pricing. Because Marjam has failed to set forth sufficient allegations to sustain a claim of commercial bribery, Marjam's Third Counterclaim is dismissed.

---

[7]    The court in *June Fabrics, Inc.* noted that "although the public is concerned with enforcing this statute in the public interest, any prosecution by reason of the very nature of the offense charged, would be initiated on the complaint of an aggrieved principal or employer." 81 N.Y.S. 2d at 882 ("Indeed, it is difficult to conceive of the initiation of the prosecution under this statute except at the [insistence] of an aggrieved employer or principal.").

## V.     The Fourth Counterclaim is Dismissed

### A.     Legal Standard

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) (internal quotation marks omitted). A claim for unfair competition "has been broadly described as encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person . . . a benefit or property right belonging to another." *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal citations, alterations, and quotation marks omitted).

The New York Court of Appeals has set forth the "two theories of common-law unfair competition" that New York courts "have long recognized": (1) "palming off," which refers to "the sale of the goods of one manufacturer as those of another," and (2) "misappropriation," which encompasses "[t]he principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor.'" *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476-77 (2007) (quoting *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 567-68 (1959)).

### B.     Marjam Has Failed to Plead an Unfair Competition Claim

Dayton and Barker assert that Marjam's unfair competition claim must be dismissed because Marjam has failed to allege sufficient facts to support such a claim under either the "palming off" or "misappropriation" theories articulated by New York courts. (Dayton Mem. at

15; Barker Mem. at 16.)  In opposition, Marjam argues that "Dayton's discriminatory pricing to Marjam, which was led to believe by Dayton that it was receiving the same price and terms as its distributor-competitors, coupled with Marjam's additional claims involving commercial bribery, constitute 'deception' at its very core and supports a claim sounding in unfair competition." (Marjam's Dayton Opp'n at 21.)

The Second Circuit's decision in *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989), has been cited for the proposition that a claim for unfair competition under New York common law "'must be grounded in *either deception or* appropriation of the exclusive property of the plaintiff.'" *See, e.g. Frink Am., Inc. v. Champion Road Machinery Ltd.*, 2000 WL 754945, at *4 (2d Cir. May 24, 2000) (unpublished) (quoting *H.L. Hayden Co.*, 879 F.2d at 1025) (emphasis added).  Based on this language, cited by the parties in their legal memorandum, Marjam asserts that its claim for unfair competition is adequately pled because it has alleged that "Dayton's grant of discriminatory pricing . . . and Barker's knowing inducement and/or receipt thereof, which were not disclosed or offered to Marjam, were deceptive."  (*See* Answer ¶ 91.)

As at least one court within the circuit has noted, however, that the above-cited language from *H.L. Hayden Co.* did not represent the holding of the Second Circuit, but was taken from the circuit court's recitation of the legal standard applied by the district court below.  *See Sears Petroleum & Transp. Corp. v. Archer Daniels Midland Co.*, 2006 WL 1304699, at *4 (N.D.N.Y. May 9, 2006) (citing *H.L. Hayden Co.*, 879 F.2d at 1025).[8]  Moreover, several courts within the

_____

[8]     The *Sears Petroleum* court noted that the lower court in *H.L. Hayden Co.* relied on language taken from *Societe Comptoir De L'Industrie Cotonniere Establissemets Boussac v. Alexander's Dep't Stores, Inc.*, 299 F.2d 33, 36 (2d Cir. 1962), but that such language

Circuit have explicitly held that, even if the pleadings contain allegations of deception or fraud, a claim for unfair competition must be dismissed in the event of a "failure to allege the necessary misappropriation of labor, skill and expenditure." *Sears Petroleum*, 2006 WL 1304699 at **1, 3-4; *see also Telecom Int'l Am., Ltd.*, 280 F.3d at 198 ("However, absent some appropriation of an idea or knowledge in which TIA had a property interest . . . we see no such impropriety here as to call for relief under New York's law of unfair competition."); *Capital Records, Inc. v. MP3Tunes, LLC*, 611 F. Supp. 2d 342, 347 (S.D.N.Y. 2009) (dismissing unfair competition counterclaim when pleading "fails to allege that Plaintiffs misappropriated [the defendant's] labors or expenditures"); *Newmarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 409 (S.D.N.Y. 2009) (dismissing unfair competition claim against defendants who had not been alleged to have undertaken "independent acts" of misappropriation); *accord Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 671 (1981) (noting "the principle of misappropriation of another's commercial advantage as a cornerstone of the tort" of unfair competition).

Marjam has not alleged that either Dayton or Barker has engaged in any acts of misappropriation of "the fruit of [Marjam's] labors and expenditures by obtaining access to [Marjam's] business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd.*, 280 F.3d at 197. Accordingly, Marjam's Fourth Counterclaim for unfair competition is dismissed.

---

"represents mere dicta and was neither stated as a holding nor even expanded upon by the court in the decision in that case." *Sears Petroleum*, 2006 WL 1304699 at * 4.

## VI.     Marjam's Second Affirmative Defense is Stricken[9]

### A.     Legal Standard for the Motion to Strike Pursuant To Rule 12(f)

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike an affirmative defense under Rule 12(f) . . . for legal insufficiency is not favored." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). Such a motion "will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *Id.* (quoting *Durham Indus., Inc. v. N. River Ins. Co.*, 482 F. Supp. 910, 913 (S.D.N.Y. 1979)). "Three prerequisites must be satisfied before a court may grant a motion to strike defenses." *F.D.I.C. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 389 (E.D.N.Y. 1997). A plaintiff must show that: "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Houston v. Manheim-New York*, 2010 WL 744119, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)).

When considering the "sufficiency of a defense" under the first two prerequisites, "courts apply the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6)." *Coach, Inc. v. Kmart Corps.*, 2010 WL 4720325, at *2 (S.D.N.Y. Nov. 16, 2010). With respect to the

---

[9]     Dayton also moves to strike Marjam's first affirmative defense – that the Complaint fails to state a claim upon which relief can be granted (Answer ¶ 7). Given that Dayton's motion for summary judgment is denied, for the reasons set forth in this Court's separate Memorandum and Order bearing today's date, the Court declines to strike Marjam's first affirmative defense.

third prong, courts within this circuit have found that "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Id.* (citing *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 272 (S.D.N.Y. 1999)).

### B. Marjam's "Unclean Hands" Defense Is Stricken

Marjam's contends that "Dayton is barred from any recovery herein against Marjam by virtue of its past, present, continuing, systematic and pervasive violations of the Robinson-Patman Act, 15 U.S.C. § 13, *et seq.*, and acts of unfair competition." (Answer ¶ 2.) Dayton asserts that Marjam's unclean hands defense is insufficient as a matter of law because, *inter alia*, it is an equitable defense that "cannot be raised as a defense to an action at law." (Dayton Mem. at 17.) As the Second Circuit has made clear, "[u]nclean hands is an equitable defense to equitable claims," and when a party "seeks damages in an action at law, [a defendant] cannot avail itself of unclean hands as a defense." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005); *see also Cohen v. Elephant Wireless, Inc.*, 2004 WL 1872421, at *3 (S.D.N.Y. Aug. 19, 2004) (striking unclean hands defense in action seeking money damages for defendant's alleged breach of contract).

Marjam contends that Dayton's Complaint contains "the <u>equitable</u> claim of 'quantum meruit.'" (Marjam Dayton Opp'n at 23 n.25 (emphasis in the original).) At least one court within this circuit, however, has analyzed relevant New York case law and concluded that "[a]lthough quantum meruit has been referred to as 'equitable' in nature and is grounded in principles of equity and fairness, it is apparent that under New York law the correct characterization of a quasi contract quantum meruit claim is that of an action at law." *Aniero Concrete Co., Inc. v. N.Y. City Constr. Auth.*, 2000 WL 863208, at *10 (S.D.N.Y. June 27, 2000)

(collecting cases). The *Aniero* court held that "because quantum meruit is a quasi contract claim and therefore appropriately characterized as a legal claim for money damages . . ., it follows that the equitable doctrine of unclean hands has no proper place as a defense to this action." *Id.* (collecting cases).

The Court finds the rationale of the *Aniero* court persuasive in this instance. Accordingly, that portion of Dayton's motion seeking to strike Marjam's second affirmative defense of "unclean hands" is GRANTED.

## CONCLUSION

For the reasons set forth above, Dayton and Barker's motions to dismiss Marjam's counterclaims and strike Marjam's first and second affirmative defenses are GRANTED in part and DENIED in part as follows: (1) Dayton's motion to dismiss Marjam's First Counterclaim is DENIED, except that, to the extent Marjam purports to assert a claim under Section 3 of the Robinson-Patman Act, 15 U.S.C. §13a, such a claim is dismissed; (2) Barker's motion to dismiss Marjam's Second Counterclaim is GRANTED; (3) Dayton and Barker's motions to dismiss Marjam's Third and Fourth Counterclaims are GRANTED; and (4) Dayton's motion to strike Marjam's second affirmative defense of "unclean hands" is GRANTED.


**SO ORDERED.**

Dated: Central Islip, New York
      February 22, 2011                        _____/s/_____
                                            Denis R. Hurley
                                            Unites States District Judge